equal force and effect to the provision of the Shipping Act that it shall be unlawful for any common carrier by water directly or indirectly to allow any person to obtain transportation for property at less than the regular rates established and enforced on the line of such carrier by any unjust or unfair device or means whatsoever.

This provision is as explicit as is the Interstate Commerce Act in expressing the intention of Congress that the established rate is the legal rate which the carrier is bound to charge and the shipper to pay.

The libelant accordingly is entitled to a decree for the balance of the freight charges due under the filed schedules whether or not the libelant in violation of its obligation as a member of the Far East Conference agreed to make the transportation in question at a rate different from that fixed by the conference and filed with the Shipping Board, as the rate established and enforced on its line.

**THE SEAL.**

No. 3488–J.

District Court, S. D. California, Central Division.

May 15, 1929.

Ames Peterson, of Los Angeles, Cal., for claimant.

Samuel W. McNabb, U. S. Atty. and Emmett E. Doherty, Asst. U. S. Atty., both of Los Angeles, Cal., for libelant.

JAMES, District Judge.

Heretofore the United States seized the power boat Seal. It then brought a libel. Forfeiture of the boat was claimed under provisions of certain sections of the Revised Statutes covering cases of false oaths made to procure the licensing of vessels, and of the Tariff Act § 594 (19 USCA § 498). Under the facts as alleged in the libel, the offending boat is made the subject of absolute forfeiture.

Alfred La Verne, appearing as owner and claimant, has asked for an order requiring the government to release the boat from custody upon his furnishing a bond in the form and to the effect provided by section 938, Revised Statutes (28 USCA § 751). The United States attorney resists the application and offers the contention that section 938, Rev. St. (28 USCA § 751), is not applicable to the case, and that under no other provision, either of the admiralty law or general statutes, is a boat seized for forfeiture by the United States subject to be released pending decree.

At the outset, the question is at once suggested: If a bond is accepted and the boat released, and a decree of forfeiture rendered, what is it that the United States then has to subject to the penalty of the law?

Where a thing is made forfeitable because of some offense committed through its use, it is the thing itself that immediately becomes an outlaw, and subject to be removed from all opportunity to repeat the offenses charged. Upon such forfeiture being declared, the thing might be destroyed, or be dealt with by the governmental power in any other way that the law provides. In such a case the government does not proceed to collect charges due it, nor is the purpose to secure the highest monetary return from the thing condemned. Very different is the case from that found in the general field of civil admiralty, or in that class where the government takes property to secure itself for the payment of fees due it, and incident penalties.

Section 938, Revised Statutes (28 USCA § 751), in the reason of its provisions, to my mind, contemplates cases only where the United States has a specific claim for money (whether as duties, fees or penalties) which it is entitled to collect. Very plainly in such cases a bond sufficient in amount to cover the charges and penalties due will adequately se-

cure to the government all that it requires under a seizure made. If there were a provision that the bond given by the claimant to release his property should provide for a return of the thing itself to the libelant upon the entry of a decree of forfeiture, there would be a better argument in favor of the position taken by the claimant in this case. But the bond, if allowed, would only return to the libelant money to the amount of the appraised value of the outlawed thing, instead of the specific property made the subject of forfeiture. As I have before stated, the government's interest in such a case is not in the worth of the thing, or the amount it will bring at a sale in the market.

The logic of the court's reasoning in United States v. The Three Friends, 166 U. S. 1, 17 S. Ct. 495, 41 L. Ed. 897, which cites The Mary N. Hogan (D. C.) 17 F. 813, seems altogether applicable to the conditions of this case. To be sure, a different statute was there under consideration, but the case was one where a forfeiture was provided to be allowed in favor of the government. I can see no reason why a different answer should be made to any case of forfeiture, as distinguished from a case of seizure to enforce payment of charges or penalties arising under a statute in the United States.

The motion of the claimant for an order that the boat seized be released to him on bond is denied. An exception is allowed to the claimant on account of the making of this order.

**KABATZNICK v. EATON, Collector of Internal Revenue.**

No. 3355.

District Court, D. Connecticut.

Oct. 9, 1930.

Perkins, Wells, Davis & Schaefer, of Hartford, Conn. (Ralph O. Wells and William S. Locke, both of Hartford, Conn., of counsel), for plaintiff.

John Buckley, U. S. Atty., and George H. Cohen, Asst. U. S. Atty., both of Hartford, Conn., and C. M. Charest, Gen. Counsel, and W. L. Marshall, Sp. Atty., Bureau of Internal Revenue, both of Washington, D. C., for defendant.

BURROWS, District Judge.

This is an action to recover additional income taxes assessed by the Commissioner for the years 1923, 1924, and 1925, amounting in the aggregate to $3,382.23, together with interest.

The plaintiff, for the tax years in question, rendered his income tax returns on the basis of cash receipts and disbursements. However, on October 1, 1923, plaintiff had certified public accountants install a set of double entry books, and since that date the records of the plaintiff's business are shown by that system. On that date a physical inventory was taken of goods on hand, and an inventory as of January 1, 1923, was determined by adding to the inventory taken October 1st, 60 per cent. of the sales from January 1st to October 1st, and deducting purchases between those dates. This method of arriving at inventory as of January 1, 1923, was also adopted by defendant's accountants, and it is conceded that this method produced a fairly accurate inventory value as of that date.

In view of the system of accounting kept by the plaintiff, the Commissioner determined that the income should be computed on an accrual basis instead of on a cash receipts and disbursements basis, on the ground that it reflected the true income more clearly, and fixed the additional taxes in question accordingly.